**May v. Dartmouth Hitchcock**            CV-02-371-B    06/24/03

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

**Melanie May**

    **v.**

                                      Civil No. 02-371-B
                                      Opinion No. 2003 DNH 111

**Dartmouth Hitchcock
  Medical Center**


**O R D E R**


    This action arises from psychiatric treatment that Melanie May received at Dartmouth Hitchcock Medical Center.  A Dartmouth Hitchcock employee who knew May discovered during the course of her employment that May had received in-patient psychiatric services at Dartmouth Hitchcock.  The employee later disclosed privileged information concerning May's condition and treatment to May's family and friends at a private function.  May brought this action against Dartmouth Hitchcock to recover for injuries she suffered as a result of the disclosures.

    May asserts that Dartmouth Hitchcock is both indirectly liable based on the respondeat superior doctrine and directly liable based on its failure to properly train and supervise the

employee who made the disclosures. May asserts claims for: (1) improperly disclosing privileged communications in violation of N.H. Rev. Stat. Ann. §§ 329:26 and 330:32(2) (1995 & Supp. 2002); (2) invasion of privacy; and (3) negligent infliction of emotional distress.[1] Dartmouth Hitchcock seeks summary judgment with respect to all of May's respondeat superior claims and her direct liability claim for improperly disclosing privileged communications. I address Dartmouth Hitchcock's challenge to each category of claims in turn.

## I. RESPONDEAT SUPERIOR

The New Hampshire Supreme Court, following the Restatement (Second) of Agency, recognizes that "an employer may be held vicariously responsible for the tortious acts of its employee if the employee was acting <u>within the scope of his or her employment when his or her tortious act injured the plaintiff</u>." <u>Pierson v. Hubbard</u>, 147 N.H. 760, 766 (N.H. 2002) (emphasis added). An employee's conduct "is within the scope of employment if, but

---

[1] May has abandoned a fourth claim based on unspecified violations of federal law.

only if (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master." Restatement (Second) of Agency § 228 (1958). Judged by this standard, the employee who injured May was not acting within the scope of her employment because she disclosed the privileged information on her own time, at a private function, and entirely for her own purposes. This is so even though the employee learned of the privileged information during the scope of her employment because it was the disclosure of the information, not its acquisition, that injured May.

May argues that the scope of employment requirement should not apply to claims based on the improper disclosure of privileged information because, if the requirement were enforced, it would effectively immunize employers from being held vicariously liable for improper disclosure claims. This is so, May argues, because, "the wrongful disclosure of confidential information would never be within the scope of the employment of its employees." Doe v. County Health Plan-Kaiser Corporation, 709 N.Y.S.2d 215, 218 (N.Y. App. Div. 2000). Even if I were to

credit the dubious premise on which this argument is based,[2] I would not deem it appropriate to create a special class of vicarious liability claims to which the scope of employment requirement is inapplicable. The respondeat superior doctrine is based on tradition and a pragmatic balancing of competing policy considerations. Even if an employer could not be held vicariously liable for improper disclosures of privileged information by its employees, it would remain directly liable for injurious disclosures that result from the employer's negligent failure to train and supervise its employees. The New Hampshire Supreme Court, which is responsible for developing the common law in this area, might well conclude that vicarious liability is not warranted when an employer reasonably trains and supervises its employees but an employee improperly discloses privileged information on her own time and for her own purposes. In any event, the New Hampshire Supreme Court has given no indication

---

[2] I can think of many instances in which an employee might misuse privileged information in an effort to further the employer's interests and thereby subject the employer to vicarious liability. For example, an employee might disclose privileged information to a third party without the patient's permission in an effort to obtain payment for services rendered. An employer could be held vicariously liable for such disclosures even though it did not specifically authorize the disclosures.

-4-

that it intends to abandon the scope of employment requirement in any context in which respondent superior liability may be imposed and I decline to break new ground in this area. Accordingly, I grant Dartmouth Hitchcock's motion to dismiss May's respondeat superior claims.

## II.   IMPROPER DISCLOSURE OF PRIVILEGED COMMUNICATION CLAIMS

Dartmouth Hitchcock argues that New Hampshire does not recognize a claim for the improper disclosure of privileged information because: (1) the New Hampshire legislature did not explicitly or by implication authorize the creation of a right to sue for damages when it codified the physician-patient and mental health provider-patient privileges; and (2) the New Hampshire Supreme Court has not yet adopted a common law tort for the improper disclosure of privileged communications.

I reject Dartmouth Hitchcock's argument because, even if the legislature did not intend to authorize a cause of action for the improper disclosure of privileged communications,[3] I am satisfied

_____

[3]  May cites N.H. Rev. Stat. Ann. §§ 329:31 and 330-A:35 to support her argument that a right to sue may be inferred from the legislature's codification of the physician-patient and mental health provider-patient privileges.  Sections 329:31 and 330-A:35

-5-

that the New Hampshire Supreme Court nevertheless would follow the great majority of courts in other jurisdictions that recognize a tort based on such disclosures.  See, e.g., Fairfax Hospital v. Curtis, 492 S.E.2d 642, 645 (Va. 1997); Alberts v. Devine, 479 N.E.2d 113, 120 (Mass. 1985); Doe v. Community Health Plan-Kaiser Corporation, 709 N.Y.S.2d at 217-18; see generally, Judy E. Zelin, Physician's Liability for Confidential Information about Patent, 48 ALR 4th 668 (1986).  Accordingly, I decline to grant Dartmouth Hitchcock's motion for summary judgment with respect to May's direct liability claim for the improper disclosure of privileged information.

Dartmouth Hitchcock's motion for partial summary judgment (Doc No. 9) is granted with respect to May's respondeat superior claims and is otherwise denied.

---

impose on physicians and mental healthcare providers a duty to disclose privileged communications under certain circumstances. Both provisions also state that "no monetary liability or cause of action may arise against a [physician or licensed mental health care provider] that makes" a required disclosure.  While these provisions are not sufficient to justify the recognition of an implied right of action for damages, they suggest that the legislature did not intend to prohibit the New Hampshire Supreme Court from recognizing a common law right to sue for disclosures that are not required by §§ 329:31 and 330-A:35.

SO ORDERED.


                                    _____
                                    Paul Barbadoro
                                    Chief Judge


June 24, 2003

cc:  Robert Larson, Esq.
     Brian Stern, Esq.